IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BRUCE RICHARD FRIEDMAN, | ) | CASE NO.:  8:16-CV-258 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S NOTICE OF** |
| v. | ) | **SUPPLEMENTAL AUTHORITY** |
| | ) | |
| NATIONAL INDEMNITY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW Defendant, National Indemnity Company ("National Indemnity"), and respectfully submits this Notice of Supplemental Authority in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Its Motion for Partial Summary Judgment.  In support hereof, National Indemnity states as follows:

1.     On September 15, 2017, the parties filed cross motions for partial summary judgment. (*See* Filing Nos. 61-65).

2.     In his Brief in Support of Plaintiff's Motion for Summary Judgment, Plaintiff argued that FLSA exemptions are to be "narrowly construed against the employers seeking to assert them." (Filing 65, Plaintiff's Brief in Support of Motion for Summary Judgment, p. 10; *see also id.* at p. 11 (arguing that courts construe FLSA exemptions narrowly against the employer)).

3.     The United States Supreme Court rejected that standard in *Encino Motorcars, LLC v. Navarro*, No. 16-1362, 584 U.S. _____ (Apr. 2, 2018) ("*Encino*").

4.     In *Encino*, the Ninth Circuit found that an FLSA exemption applicable to "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles" at a covered dealership did not apply to certain employees. *Encino*, slip op. at p. 1, 4-5. In so holding, the Ninth Circuit "noted that its interpretation [of the exemption] was supported by the principle that exemptions to the FLSA should be construed narrowly." *Encino*, slip op. at pp. 4-5.  The Supreme Court disagreed and rejected the principle that FLSA exemptions should be "construed narrowly."  Rather, the Supreme Court held that FLSA exemptions must simply be given a "fair reading." *Encino*, slip op. at p. 9.

5.     To the extent Plaintiff's Brief references the now-rejected principle that FLSA exemptions should be "construed narrowly," that incorrect legal standard should be disregarded and the standard articulated by the Supreme Court in *Encino*, requiring a "fair reading," should control.

6.     A copy of the Supreme Court's *Encino* decision is attached hereto as Exhibit "A."

Respectfully submitted this 12th day of April, 2018.

NATIONAL INDEMNITY COMPANY,
Defendant.


BY:   *Patrick J. Barrett*
   Patrick J. Barrett, #17246
   Sarah L. (Sally) McGill, #24790
   FRASER STRYKER PC LLO
   500 Energy Plaza
   409 South 17th Street
   Omaha, NE 68102-2663
   (402) 341-6000
   pbarrett@fraserstryker.com
   smcgill@fraserstryker.com
   ATTORNEYS FOR DEFENDANT


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed with the Clerk of Court for the United States District Court for the District of Nebraska using the CM/ECF system this 12th day of April, 2018, which system sent notification of such filing to the following counsel of record:

   Terry A. White
   Carlson & Burnett
   17525 Arbor Street
   Omaha, NE 68130


   *Patrick J. Barrett*

1866409

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ENCINO MOTORCARS, LLC *v.* NAVARRO ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 16–1362.  Argued January 17, 2018—Decided April 2, 2018

Respondents, current and former service advisors for petitioner Encino Motorcars, LLC, sued petitioner for backpay, alleging that petitioner violated the Fair Labor Standards Act (FLSA) by failing to pay them overtime.  Petitioner moved to dismiss, arguing that service advisors are exempt from the FLSA's overtime-pay requirement under 29 U. S. C. §213(b)(10)(A), which applies to "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements."  The District Court agreed and dismissed the suit.  The Court of Appeals for the Ninth Circuit reversed. It found the statute ambiguous and the legislative history inconclusive, and it deferred to a 2011 Department of Labor rule that interpreted "salesman" to exclude service advisors.  This Court vacated the Ninth Circuit's judgment, holding that courts could not defer to the procedurally defective 2011 rule, *Encino Motorcars, LLC* v. *Navarro*, 579 U. S. ___, ___–___ (*Encino I*), but not deciding whether the exemption covers service advisors, *id.,* at ___.  On remand, the Ninth Circuit again held that the exemption does not include service advisors.

*Held*: Because service advisors are "salesm[e]n . . . primarily engaged in . . . servicing automobiles," they are exempt from the FLSA's overtime-pay requirement.  Pp. 5–11.

(a) A service advisor is obviously a "salesman."  The ordinary meaning of "salesman" is someone who sells goods or services, and service advisors "sell [customers] services for their vehicles," *Encino I, supra,* at ___.  P. 6.

(b) Service advisors are also "primarily engaged in . . . servicing automobiles."  "Servicing" can mean either "the action of maintaining or repairing a motor vehicle" or "[t]he action of providing a service."  15



EXHIBIT A

Syllabus

Oxford English Dictionary 39. Service advisors satisfy both definitions because they are integral to the servicing process. They "mee[t] customers; liste[n] to their concerns about their cars; sugges[t] repair and maintenance services; sel[l] new accessories or replacement parts; recor[d] service orders; follo[w] up with customers as the services are performed (for instance, if new problems are discovered); and explai[n] the repair and maintenance work when customers return for their vehicles." *Encino I, supra,* at ___. While service advisors do not spend most of their time physically repairing automobiles, neither do partsmen, who the parties agree are "primarily engaged in . . . servicing automobiles." Pp. 6–7.

(c) The Ninth Circuit invoked the distributive canon—matching "salesman" with "selling" and "partsman [and] mechanic" with "[servicing]"—to conclude that the exemption simply does not apply to "salesm[e]n . . . primarily engaged in . . . servicing automobiles." But the word "or," which connects all of the exemption's nouns and gerunds, is "almost always disjunctive." *United States* v. *Woods,* 571 U. S. 31, 45. Using "or" to join "selling" and "servicing" thus suggests that the exemption covers a salesman primarily engaged in either activity.

Statutory context supports this reading. First, the distributive canon has the most force when one-to-one matching is present, but here, the statute would require matching some of three nouns with one of two gerunds. Second, the distributive canon has the most force when an ordinary, disjunctive reading is linguistically impossible. But here, "salesman . . . primarily engaged in . . . servicing automobiles" is an apt description of a service advisor. Third, a narrow distributive phrasing is an unnatural fit here because the entire exemption bespeaks breadth, starting with "any" and using the disjunctive "or" three times. Pp. 7–9.

(d) The Ninth Circuit also invoked the principle that exemptions to the FLSA should be construed narrowly. But the Court rejects this principle as a guide to interpreting the FLSA. Because the FLSA gives no textual indication that its exemptions should be construed narrowly, they should be given a fair reading. P. 9.

(e) Finally, the Ninth Circuit's reliance on two extraneous sources to support its interpretation—the 1966–1967 Occupational Outlook Handbook and the FLSA's legislative history—is unavailing. Pp. 9–11.

845 F. 3d 925, reversed and remanded.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, ALITO, and GORSUCH, JJ., joined. GINSBURG, J., filed a dissenting opinion, in which BREYER, SOTOMAYOR, and KAGAN, JJ., joined.

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

—————

No. 16–1362

—————

## ENCINO MOTORCARS, LLC, PETITIONER *v.* HECTOR NAVARRO, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[April 2, 2018]

JUSTICE THOMAS delivered the opinion of the Court.

The Fair Labor Standards Act (FLSA), 52 Stat. 1060, as amended, 29 U. S. C. §201 *et seq.*, requires employers to pay overtime compensation to covered employees. The FLSA exempts from the overtime-pay requirement "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles" at a covered dealership. §213(b)(10)(A). We granted certiorari to decide whether this exemption applies to service advisors—employees at car dealerships who consult with customers about their servicing needs and sell them servicing solutions. We conclude that service advisors are exempt.

I

A

Enacted in 1938, the FLSA requires employers to pay overtime to covered employees who work more than 40 hours in a week. 29 U. S. C. §207(a). But the FLSA exempts many categories of employees from this requirement. See §213. Employees at car dealerships have long been among those exempted.

Congress initially exempted all employees at car dealer-

ships from the overtime-pay requirement.  See Fair Labor Standards Amendments of 1961, §9, 75 Stat. 73.  Congress then narrowed that exemption to cover "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trailers, trucks, farm implements, or aircraft."  Fair Labor Standards Amendments of 1966, §209, 80 Stat. 836.  In 1974, Congress enacted the version of the exemption at issue here.  It provides that the FLSA's overtime-pay requirement does not apply to "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." §213(b)(10)(A).

This language has long been understood to cover service advisors.  Although the Department of Labor initially interpreted it to exclude them, 35 Fed. Reg. 5896 (1970) (codified at 29 CFR §779.372(c)(4) (1971)), the federal courts rejected that view, see *Brennan* v. *Deel Motors, Inc.*, 475 F. 2d 1095 (CA5 1973); *Brennan* v. *North Bros. Ford, Inc.*, 76 CCH LC ¶33, 247 (ED Mich. 1975), aff'd *sub nom. Dunlop* v. *North Bros. Ford, Inc.*, 529 F. 2d 524 (CA6 1976) (table).  After these decisions, the Department issued an opinion letter in 1978, explaining that service advisors are exempt in most cases.  See Dept. of Labor, Wage & Hour Div., Opinion Letter No. 1520 (WH–467) (1978), [1978–1981 Transfer Binder] CCH Wages–Hours Administrative Rulings ¶31,207.  From 1978 to 2011, Congress made no changes to the exemption, despite amending §213 nearly a dozen times.  The Department also continued to acquiesce in the view that service advisors are exempt.  See Dept. of Labor, Wage & Hour Div., Field Operations Handbook, Insert No. 1757, 24L04(k) (Oct. 20, 1987), online at https://perma.cc/5GHD-KCJJ (as last visited Mar. 28, 2018).

Opinion of the Court

In 2011, however, the Department reversed course.  It issued a rule that interpreted "salesman" to exclude service advisors.  76 Fed. Reg. 18832, 18859 (2011) (codified at 29 CFR §779.372(c)).  That regulation prompted this litigation.

### B

Petitioner Encino Motorcars, LLC, is a Mercedes-Benz dealership in California.  Respondents are current and former service advisors for petitioner.  Service advisors "interact with customers and sell them services for their vehicles." *Encino Motorcars, LLC* v. *Navarro*, 579 U. S. ___, ___ (2016) (*Encino I*) (slip op., at 2).  They "mee[t] customers; liste[n] to their concerns about their cars; sugges[t] repair and maintenance services; sel[l] new accessories or replacement parts; recor[d] service orders; follo[w] up with customers as the services are performed (for instance, if new problems are discovered); and explai[n] the repair and maintenance work when customers return for their vehicles." *Ibid.*

In 2012, respondents sued petitioner for backpay.  Relying on the Department's 2011 regulation, respondents alleged that petitioner had violated the FLSA by failing to pay them overtime.  Petitioner moved to dismiss, arguing that service advisors are exempt under §213(b)(10)(A).  The District Court agreed with petitioner and dismissed the complaint, but the Court of Appeals for the Ninth Circuit reversed.  Finding the text ambiguous and the legislative history "inconclusive," the Ninth Circuit deferred to the Department's 2011 rule under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984).  *Encino*, 780 F. 3d 1267, 1275 (2015).

We granted certiorari and vacated the Ninth Circuit's judgment.  We explained that courts cannot defer to the 2011 rule because it is procedurally defective.  See *Encino I,* 579 U. S., at ___–___ (slip op., at 8–12).  Specifically, the

regulation undermined significant reliance interests in the automobile industry by changing the treatment of service advisors without a sufficiently reasoned explanation. *Id.,* at ___ (slip op., at 10). But we did not decide whether, without administrative deference, the exemption covers service advisors. *Id.,* at ___ (slip op., at 12). We remanded that issue for the Ninth Circuit to address in the first instance. *Ibid.*

C

On remand, the Ninth Circuit again held that the exemption does not include service advisors. The Court of Appeals agreed that a service advisor is a "'salesman'" in a "generic sense," 845 F. 3d 925, 930 (2017), and is "'primarily engaged in . . . servicing automobiles'" in a "general sense," *id.,* at 931. Nonetheless, it concluded that "Congress did not intend to exempt service advisors." *Id.,* at 929.

The Ninth Circuit began by noting that the Department's 1966–1967 Occupational Outlook Handbook listed 12 job titles in the table of contents that could be found at a car dealership, including "automobile mechanics," "automobile parts countermen," "automobile salesmen," and "automobile service advisors." *Id.,* at 930. Because the FLSA exemption listed three of these positions, but not service advisors, the Ninth Circuit concluded that service advisors are not exempt. *Ibid.* The Ninth Circuit also determined that service advisors are not primarily engaged in "servicing" automobiles, which it defined to mean "only those who are actually occupied in the repair and maintenance of cars." *Id.,* at 931. And the Ninth Circuit further concluded that the exemption does not cover salesmen who are primarily engaged in servicing. *Id.,* at 933. In reaching this conclusion, the Ninth Circuit invoked the distributive canon. See A. Scalia & B. Garner, Reading Law 214 (2012) ("Distributive phrasing applies

Opinion of the Court

each expression to its appropriate referent"). It reasoned that "Congress intended the gerunds—selling and servicing—to be distributed to their appropriate subjects—salesman, partsman, and mechanic. A salesman sells; a partsman services; and a mechanic services." *Id.,* at 934. Finally, the Court of Appeals noted that its interpretation was supported by the principle that exemptions to the FLSA should be construed narrowly, *id.,* at 935, and the lack of any "mention of service advisors" in the legislative history, *id.,* at 939.

We granted certiorari, 582 U. S. ___ (2017), and now reverse.

## II

The FLSA exempts from its overtime-pay requirement "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." §213(b)(10)(A). The parties agree that petitioner is a "nonmanufacturing establishment primarily engaged in the business of selling [automobiles] to ultimate purchasers." The parties also agree that a service advisor is not a "partsman" or "mechanic," and that a service advisor is not "primarily engaged . . . in selling automobiles." The question, then, is whether service advisors are "salesm[e]n . . . primarily engaged in . . . servicing automobiles." We conclude that they are. Under the best reading of the text, service advisors are "salesm[e]n," and they are "primarily engaged in . . . servicing automobiles." The distributive canon, the practice of construing FLSA exemptions narrowly, and the legislative history do not persuade us otherwise.

### A

A service advisor is obviously a "salesman." The term "salesman" is not defined in the statute, so "we give the term its ordinary meaning." *Taniguchi* v. *Kan Pacific Saipan, Ltd.*, 566 U. S. 560, 566 (2012). The ordinary meaning of "salesman" is someone who sells goods or services. See 14 Oxford English Dictionary 391 (2d ed. 1989) ("[a] man whose business it is to sell goods or conduct sales"); Random House Dictionary of the English Language 1262 (1966) ("a man who sells goods, services, etc."). Service advisors do precisely that. As this Court previously explained, service advisors "sell [customers] services for their vehicles." *Encino I,* 579 U. S., at ___ (slip op., at 2).

### B

Service advisors are also "primarily engaged in . . . servicing automobiles." §213(b)(10)(A). The word "servicing" in this context can mean either "the action of maintaining or repairing a motor vehicle" or "[t]he action of providing a service." 15 Oxford English Dictionary, at 39; see also Random House Dictionary of the English Language, at 1304 ("to make fit for use; repair; restore to condition for service"). Service advisors satisfy both definitions. Service advisors are integral to the servicing process. They "mee[t] customers; liste[n] to their concerns about their cars; sugges[t] repair and maintenance services; sel[l] new accessories or replacement parts; recor[d] service orders; follo[w] up with customers as the services are performed (for instance, if new problems are discovered); and explai[n] the repair and maintenance work when customers return for their vehicles." *Encino I, supra*, at ___ (slip op., at 2). If you ask the average customer who services his car, the primary, and perhaps only, person he is likely to identify is his service advisor.

True, service advisors do not spend most of their time

Opinion of the Court

physically repairing automobiles.  But the statutory language is not so constrained.  All agree that partsmen, for example, are "primarily engaged in . . . servicing automobiles."  Brief for Petitioner 40; Brief for Respondents 41–44.  But partsmen, like service advisors, do not spend most of their time under the hood.  Instead, they "obtain the vehicle parts . . . and provide those parts to the mechanics."  *Encino I, supra*, at ___ (slip op., at 2); see also 1 Dept. of Labor, Dictionary of Occupational Titles 33 (3d ed. 1965) (defining "partsman" as someone who "[p]urchases, stores, and issues spare parts for automotive and industrial equipment").  In other words, the phrase "primarily engaged in . . . servicing automobiles" must include some individuals who do not physically repair automobiles themselves but who are integrally involved in the servicing process.  That description applies to partsmen and service advisors alike.

## C

The Ninth Circuit concluded that service advisors are not covered because the exemption simply does not apply to "salesm[e]n . . . primarily engaged in . . . servicing automobiles."  The Ninth Circuit invoked the distributive canon to reach this conclusion.  Using that canon, it matched "salesman" with "selling" and "partsma[n] [and] mechanic" with "servicing."  We reject this reasoning.

The text of the exemption covers "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements."  §213(b)(10)(A).  The exemption uses the word "or" to connect all of its nouns and gerunds, and "or" is "almost always disjunctive."  *United States* v. *Woods,* 571 U. S. 31, 45 (2013).  Thus, the use of "or" to join "selling" and "servicing" suggests that the exemption covers a salesman primarily engaged in either activity.

Unsurprisingly, statutory context can overcome the

ordinary, disjunctive meaning of "or." The distributive canon, for example, recognizes that sometimes "[w]here a sentence contains several antecedents and several consequents," courts should "read them distributively and apply the words to the subjects which, by context, they seem most properly to relate." 2A N. Singer & S. Singer, Sutherland Statutes and Statutory Construction §47:26, p. 448 (rev. 7th ed. 2014).

But here, context favors the ordinary disjunctive meaning of "or" for at least three reasons. First, the distributive canon has the most force when the statute allows for one-to-one matching. But here, the distributive canon would mix and match some of three nouns—"salesman, partsman, or mechanic"—with one of two gerunds— "selling or servicing." §213(b)(10)(A). We doubt that a legislative drafter would leave it to the reader to figure out the precise combinations. Second, the distributive canon has the most force when an ordinary, disjunctive reading is linguistically impossible. Cf., *e.g., Huidekoper's Lessee* v. *Douglass*, 3 Cranch 1, 67 (1805) (Marshall, C. J.) (applying the distributive canon when a purely disjunctive reading "would involve a contradiction in terms"). But as explained above, the phrase "salesman . . . primarily engaged in . . . servicing automobiles" not only makes sense; it is an apt description of a service advisor. Third, a narrow distributive phrasing is an unnatural fit here because the entire exemption bespeaks breadth. It begins with the word "any." See *Ali* v. *Federal Bureau of Prisons*, 552 U. S. 214, 219 (2008) (noting the "expansive meaning" of "any"). And it uses the disjunctive word "or" three times. In fact, all agree that the third list in the exemption—"automobiles, trucks, or farm implements"— modifies every other noun and gerund. But it would be odd to read the exemption as starting with a distributive phrasing and then, halfway through and without warning, switching to a disjunctive phrasing—all the while using

Cite as: 584 U. S. ____ (2018)            9

Opinion of the Court

the same word ("or") to signal both meanings. See *Brown* v. *Gardner*, 513 U. S. 115, 118 (1994) (noting the "vigorous" presumption that, "when a term is repeated within a given sentence," it "is used to mean the same thing"). The more natural reading is that the exemption covers any combination of its nouns, gerunds, and objects.

### D

The Ninth Circuit also invoked the principle that exemptions to the FLSA should be construed narrowly. 845 F. 3d, at 935–936. We reject this principle as a useful guidepost for interpreting the FLSA. Because the FLSA gives no "textual indication" that its exemptions should be construed narrowly, "there is no reason to give [them] anything other than a fair (rather than a 'narrow') interpretation." Scalia, Reading Law, at 363. The narrow-construction principle relies on the flawed premise that the FLSA "'pursues'" its remedial purpose "'at all costs.'" *American Express Co.* v. *Italian Colors Restaurant*, 570 U. S. 228, 234 (2013) (quoting *Rodriguez* v. *United States*, 480 U. S. 522, 525–526 (1987) (*per curiam*)); see also *Henson* v. *Santander Consumer USA Inc.*, 582 U. S. ___, ___ (2017) (slip op., at 9) ("[I]t is quite mistaken to assume . . . that whatever might appear to further the statute's primary objective must be the law" (internal quotation marks and alterations omitted)). But the FLSA has over two dozen exemptions in §213(b) alone, including the one at issue here. Those exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement. See *id.*, at ___ (slip op., at 9) ("Legislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of passage"). We thus have no license to give the exemption anything but a fair reading.

### E

Finally, the Ninth Circuit relied on two extraneous

sources to support its interpretation: the Department's 1966–1967 Occupational Outlook Handbook and the FLSA's legislative history.  We find neither persuasive.

### 1

The Ninth Circuit first relied on the Department's 1966–1967 Occupational Outlook Handbook.  It identified 12 jobs from the Handbook's table of contents that it thought could be found at automobile dealerships.  See 845 F. 3d, at 930.  The Ninth Circuit then stressed that the exemption aligns with three of those job titles— "[a]utomobile mechanics," "[a]utomobile parts counter-men," and "[a]utomobile salesmen"—but not "[a]utomobile service advisors."  *Ibid.*

The Ninth Circuit cited nothing, however, suggesting that the exemption was meant to align with the job titles listed in the Handbook.  To the contrary, the exemption applies to "any salesman . . . primarily engaged in selling or servicing automobiles."  It is not limited, like the term in the Handbook, to "automobile salesmen."  And the ordinary meaning of "salesman" plainly includes service advisors.

### 2

The Ninth Circuit also relied on legislative history to support its interpretation.  See *id.*, at 936–939.  Specifi-cally, it noted that the legislative history discusses "automo-bile salesmen, partsmen, and mechanics" but never dis-cusses service advisors.  *Id.*, at 939.  Although the Ninth Circuit had previously found that same legislative history "inconclusive," *Encino*, 780 F. 3d, at 1275, on remand it was "firmly persuaded" that the legislative history demon-strated Congress' desire to exclude service advisors, 845 F. 3d, at 939.

The Ninth Circuit was right the first time.  As we have explained, the best reading of the statute is that service

Opinion of the Court

advisors are exempt. Even for those Members of this Court who consider legislative history, silence in the legislative history, "no matter how 'clanging,'" cannot defeat the better reading of the text and statutory context. *Sedima, S. P. R. L.* v. *Imrex Co.*, 473 U. S. 479, 495, n. 13 (1985). If the text is clear, it needs no repetition in the legislative history; and if the text is ambiguous, silence in the legislative history cannot lend any clarity. See *Avco Corp.* v. *Department of Justice*, 884 F. 2d 621, 625 (CADC 1989). Even if Congress did not foresee all of the applications of the statute, that is no reason not to give the statutory text a fair reading. See *Union Bank* v. *Wolas*, 502 U. S. 151, 158 (1991).

\*    \*    \*

In sum, we conclude that service advisors are exempt from the overtime-pay requirement of the FLSA because they are "salesm[e]n . . . primarily engaged in . . . servicing automobiles." §213(b)(10)(A). Accordingly, we reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–1362

_____

## ENCINO MOTORCARS, LLC, PETITIONER *v.* HECTOR NAVARRO, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[April 2, 2018]

JUSTICE GINSBURG, with whom JUSTICE BREYER, JUSTICE SOTOMAYOR, and JUSTICE KAGAN join, dissenting.

Diverse categories of employees staff automobile dealerships.  Of employees so engaged, Congress explicitly exempted from the Fair Labor Standards Act hours requirements only three occupations: salesmen, partsmen, and mechanics.  The Court today approves the exemption of a fourth occupation: automobile service advisors.  In accord with the judgment of the Court of Appeals for the Ninth Circuit, I would not enlarge the exemption to include service advisors or other occupations outside Congress' enumeration.

Respondents are service advisors at a Mercedes-Benz automobile dealership in the Los Angeles area.  They work regular hours, 7 a.m. to 6 p.m., at least five days per week, on the dealership premises.  App. 54.  Their weekly minimum is 55 hours.  Maximum hours, for workers covered by the Fair Labor Standards Act (FLSA or Act), are 40 per week.  29 U. S. C. §207(a)(1).  In this action, respondents seek time-and-a-half compensation for hours worked beyond the 40 per week maximum prescribed by the FLSA.

The question presented: Are service advisors exempt from receipt of overtime compensation under 29 U. S. C. §213(b)(10)(A)?  That exemption covers "any salesman,

GINSBURG, J., dissenting

partsman, or mechanic primarily engaged in selling or servicing automobiles." Service advisors, such as respondents, neither sell automobiles nor service (*i.e.,* repair or maintain) vehicles. Rather, they "meet and greet [car] owners"; "solicit and sugges[t]" repair services "to remedy the [owner's] complaints"; "solicit and suggest . . . supplemental [vehicle] service[s]"; and provide owners with cost estimates. App. 55. Because service advisors neither sell nor repair automobiles, they should remain outside the exemption and within the Act's coverage.

I

In 1961, Congress exempted all automobile-dealership employees from the Act's overtime-pay requirements. See Fair Labor Standards Amendments of 1961, §9, 75 Stat. 73.[1] Five years later, in 1966, Congress confined the dealership exemption to three categories of employees: automobile salesmen, mechanics, and partsmen. See Fair Labor Standards Amendments of 1966, §209, 80 Stat. 836. At the time, it was well understood that mechanics perform "preventive maintenance" and "repairs," Dept. of Labor, Occupational Outlook Handbook 477 (1966–1967 ed.) (Handbook), while partsmen requisition parts, "suppl[y] [them] to mechanics," *id.,* at 312, and, at times, have "mechanical responsibilities in repairing parts," Brief for International Association of Machinists and Aerospace Workers, AFL–CIO, as *Amicus Curiae* 30; see Handbook, at 312–313 (partsmen may "measure parts for interchangeability," test parts for "defect[s]," and "repair

───────────

[1] The exemption further extended to all employees of establishments selling "trucks" and "farm implements." Fair Labor Standards Amendments of 1961, §9, 75 Stat. 73. When Congress later narrowed the provision's scope for automobile-dealership employees, it similarly diminished the exemption's application to workers at truck and farm-implement dealerships. See, *e.g.,* Fair Labor Standards Amendments of 1966, §209, 80 Stat. 836.

parts"). Congress did not exempt numerous other categories of dealership employees, among them, automobile painters, upholsterers, bookkeeping workers, cashiers, janitors, purchasing agents, shipping and receiving clerks, and, most relevant here, service advisors. These positions and their duties were well known at the time, as documented in U. S. Government catalogs of American jobs. See *Handbook,* at XIII, XV, XVI (table of contents); Brief for International Association of Machinists and Aerospace Workers, AFL–CIO, as *Amicus Curiae* 34 (noting "more than twenty distinct [job] classifications" in the service department alone).

"Where Congress explicitly enumerates certain exceptions . . . , additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *TRW Inc.* v. *Andrews*, 534 U. S. 19, 28 (2001) (internal quotation marks omitted). The Court thus has no warrant to add to the three explicitly exempt categories (salesmen, partsmen, and mechanics) a fourth (service advisors) for which the Legislature did not provide. The reach of today's ruling is uncertain, troublingly so: By expansively reading the exemption to encompass all salesmen, partsmen, and mechanics who are "integral to the servicing process," *ante,* at 6, the Court risks restoring much of what Congress intended the 1966 amendment to terminate, *i.e.,* the blanket exemption of all dealership employees from overtime-pay requirements.

## II

Had the §213(b)(10)(A) exemption covered "any salesman or mechanic primarily engaged in selling or servicing automobiles," there could be no argument that service advisors fit within it. Only "salesmen" primarily engaged in "selling" automobiles and "mechanics" primarily engaged in "servicing" them would fall outside the Act's coverage. Service advisors, defined as "*salesmen* primarily

engaged in the *selling of services*," *Encino Motorcars, LLC* v. *Navarro*, 579 U. S. ___, ___ (2016) (THOMAS, J., dissenting) (slip op., at 2) (emphasis added), plainly do not belong in either category. Moreover, even if the exemption were read to reach "salesmen" "primarily engaged in *servicing* automobiles," not just selling them, service advisors would not be exempt. The ordinary meaning of "servicing" is "the action of maintaining or repairing a motor vehicle." *Ante,* at 6 (quoting 15 Oxford English Dictionary 39 (2d ed. 1989)). As described above, see *supra,* at 2, service advisors neither maintain nor repair automobiles.[2]

Petitioner stakes its case on Congress' addition of the "partsman" job to the exemption. See Reply Brief 6–10. That inclusion, petitioner urges, has a vacuum effect: It draws into the exemption job categories other than the three for which Congress provided, in particular, service advisors. Because partsmen, like service advisors, neither "sell" nor "service" automobiles in the conventional sense, petitioner reasons, Congress must have intended the word "service" to mean something broader than repair and maintenance.

To begin with, petitioner's premise is flawed. Unlike service advisors, partsmen "'get their hands dirty' by 'working as a mechanic's right-hand man or woman.'" *Encino Motorcars*, 579 U. S., at ___, n. 1 (GINSBURG, J., concurring) (slip op., at 1, n. 1) (quoting Brief for Respondents in No. 15–415, p. 11; alterations omitted); see *supra,*

––––––––––

[2]Service advisors do not maintain or repair motor vehicles even if, as the Court concludes, they are "integral to the servicing process." *Ante,* at 6. The Ninth Circuit provided an apt analogy: "[A] receptionist-scheduler at a dental office fields calls from patients, matching their needs (*e.g.,* a broken tooth or jaw pain) with the appropriate provider, appointment time, and length of anticipated service. That work is integral to a patient's obtaining dental services, but we would not say that the receptionist-scheduler is 'primarily engaged in' cleaning teeth or installing crowns." 845 F. 3d 925, 932 (2017).

at 2–3 (describing duties of partsmen). As the Solicitor General put it last time this case was before the Court, a mechanic "might be able to obtain the parts to complete a repair without the real-time assistance of a partsman by his side." Brief for United States as *Amicus Curiae* in No. 15–415, p. 23. But dividing the "key [repair] tasks . . . between two individuals" only "reinforces" "that both the mechanic and the partsman are . . . involved in repairing ('servicing') the vehicle." *Ibid.* Service advisors, in contrast, "*sell . . . services* [to customers] for their vehicles," *Encino Motorcars*, 579 U. S., at ___ (slip op., at 2) (emphasis added)—services that are later performed by mechanics and partsmen.

Adding partsmen to the exemption, moreover, would be an exceptionally odd way for Congress to have indicated that "servicing" should be given a meaning deviating from its ordinary usage. There is a more straightforward explanation for Congress' inclusion of partsmen alongside salesmen and mechanics: Common features of the three enumerated jobs make them unsuitable for overtime pay.

Both salesmen and mechanics work irregular hours, including nights and weekends, not uncommonly offsite, rendering time worked not easily tracked.[3]   As noted in the 1966 Senate floor debate, salesmen "go out at unusual hours, trying to earn commissions." 112 Cong. Rec. 20504

_____

[3]In addition to practical difficulties in calculating hours, a core purpose of overtime may not be served when employees' hours regularly fluctuate. Enacted in the midst of the Great Depression, the FLSA overtime rules encourage employers to hire more individuals who work 40-hour weeks, rather than maintaining a staff of fewer employees who consistently work longer hours. See *Overnight Motor Transp. Co.* v. *Missel*, 316 U. S. 572, 577–578 (1942) (overtime rules apply "financial pressure" on employers to "spread employment"); 7 D. VanDeusen, Labor and Employment Law §176.02[1] (2018). But if a position's working hours routinely ebb and flow, while averaging 40 each week, then it does not make sense to encourage employers to hire more workers for that position.

(1966) (remarks of Sen. Bayh).  See also *ibid.* (remarks of Sen. Yarborough) ("[T]he salesman . . . [can] sell an Oldsmobile, a Pontiac, or a Buick all day long and all night.  He is not under any overtime.").  Mechanics' work may involve similar "difficult[ies] [in] keeping regular hours."  *Ibid.*  For example, mechanics may be required to "answe[r] calls in . . . rural areas," *ibid.*, or to "go out on the field where there is a harvesting of sugarbeets," *id.,* at 20505 (remarks of Sen. Clark).[4]  And, like salesmen, mechanics may be "subject to substantial seasonal variations in business."  *Id.,* at 20502 (remarks of Sen. Hruska).

Congress added "partsman" to the exemption because it believed that job, too, entailed irregular hours.  See *ibid.*  This is "especially true," several Senators emphasized, "in the farm equipment business where farmers, during planting, cultivating and harvesting seasons, may call on their dealers for parts at any time during the day or evening and on weekends."  *Ibid.* (remarks of Sen. Bayh).  See also *id.,* at 20503 (remarks of Sen. Mansfield).  In Senator Bayh's experience, for instance, a mechanic who "could not find [a] necessary part" after hours might "call the partsman, get him out of bed, and get him to come down to the store."  *Id.,* at 20504.  See also *id.,* at 20503 (remarks of Sen. Hruska) ("Are we going to say to the farmer who needs a part . . . on Sunday: You cannot get a spark plug . . . because the partsman is not exempt, but you can have machinery repaired by a mechanic who is exempt[?]").  Although some Senators opposed adding partsmen to the exemption because, as they understood the job's demands, partsmen did not work irregular hours, *e.g., id.,* at 20505 (remarks of Sen. Clark), the crux of the debate underscores the exemption's rationale.

––––––––––

[4] Recall that the exemption extends to salesmen, mechanics, and partsmen at dealerships selling farm implements and trucks, not just automobiles.  See *supra,* at 2, n. 1.

GINSBURG, J., dissenting

That rationale has no application here. Unlike salesmen, partsmen, and mechanics, service advisors "wor[k] ordinary, fixed schedules on-site." Brief for Respondents 47 (citing Handbook, at 316). Respondents, for instance, work *regular* 11-hour shifts, at all times of the year, for a weekly minimum of 55 hours. See App. 54. Service advisors thus do not implicate the concerns underlying the §213(b)(10)(A) exemption. Indeed, they are precisely the type of workers Congress intended the FLSA to shield "from the evil of overwork," *Barrentine* v. *Arkansas-Best Freight System, Inc.*, 450 U. S. 728, 739 (1981) (internal quotation marks omitted).

I note, furthermore, that limiting the exemption to the three delineated jobs—salesman, partsman, and mechanic—does not leave the phrase "primarily engaged in selling or servicing," §213(b)(10)(A), without utility. Congress included that language to ensure that only employees who actually perform the tasks commonly associated with the enumerated positions would be covered. Otherwise, for example, a worker who acts as a "salesman" in name only could lose the FLSA's protections merely because of the formal title listed on the employer's payroll records. See *Bowers* v. *Fred Haas Toyota World*, 2017 WL 5127289, *4 (SD Tex., June 21, 2017) ("[An employee's] title alone is not dispositive of whether he meets the . . . exemption."). Thus, by partsmen "primarily engaged in . . . *servicing* automobiles," Congress meant nothing more than partsmen primarily engaged in *the ordinary duties of a partsman, i.e.,* requisitioning, supplying, and repairing parts. See *supra,* at 2–3, 4–5. The inclusion of "partsman" therefore should not result in the removal of service advisors from the Act's protections.

III

Petitioner contends that "affirming the decision below would disrupt decades of settled expectations" while ex-

posing "employers to substantial retroactive liability." Brief for Petitioner 51. "[M]any dealerships," petitioner urges, "have offered compensation packages based primarily on sales commissions," in reliance on court decisions and agency guidance ranking service advisors as exempt. *Id.,* at 51–52. Respondents here, for instance, are compensated on a "pure commission basis." App. 55. Awarding retroactive overtime pay to employees who were "focused on earning commissions," not "working a set number of hours," petitioner argues, would yield an "unjustified windfal[l]." Brief for Petitioner 53.

Petitioner's concerns are doubly overstated. As the Court previously acknowledged, see *Encino Motorcars,* 579 U. S., at ___ (slip op., at 11), the FLSA provides an affirmative defense that explicitly protects regulated parties from retroactive liability for actions taken in good-faith reliance on superseded agency guidance. See 29 U. S. C. §259(a). Given the Department of Labor's longstanding view that service advisors fit within the §213(b)(10)(A) exemption, see *ante,* at 2, the reliance defense would surely shield employers from retroactive liability were the Court to construe the exemption properly.

Congress, moreover, has spoken directly to the treatment of *commission*-based workers. The FLSA exempts from its overtime directives any employee of a "retail or service establishment" who receives more than half of his or her pay on commission, so long as the employee's "regular rate of pay" is more than 1½ times the minimum wage. §207(i). Thus, even without the §213(b)(10)(A) exemption, many service advisors compensated on commission would remain ineligible for overtime remuneration.[5]

——————

[5]The current FLSA minimum wage, for example, is $7.25 per hour. See 29 U. S. C. §206(a)(1)(C). The only commission-based service advisors at retail or service establishments who are *not* already exempt under §207(i)—and who thus remain eligible for overtime—are those earning less than $10.88 per hour. Providing such workers time-and-a-

GINSBURG, J., dissenting

In crafting the commission-pay exemption, Congress struck a deliberate balance: It exempted *higher* paid commissioned employees, perhaps in recognition of their potentially irregular hours, see *Mechmet* v. *Four Seasons Hotels, Ltd.*, 825 F. 2d 1173, 1176–1177 (CA7 1987); cf. *supra,* at 5–7, but it maintained protection for *lower* paid employees, to vindicate the Act's "principal . . . purpose" of shielding "workers from substandard wages and oppressive working hours," *Barrentine*, 450 U. S., at 739.[6] By stretching the §213(b)(10)(A) exemption to encompass even the lowest income service advisors compensated on commission, the Court upsets Congress' careful balance, while stripping away protection for the most vulnerable workers in this occupation.

\*   \*   \*

This Court once recognized that the "particularity" of FLSA exemptions "preclude[s] their enlargement by implication." *Addison* v. *Holly Hill Fruit Products, Inc.*, 322 U. S. 607, 617 (1944). Employees outside the Act's "narrow and specific" exemptions, the Court affirmed, "remain within the Act." *Powell* v. *United States Cartridge Co.*, 339 U. S. 497, 517 (1950).[7] The Court today, in adding an

––––––––

half pay, as Congress directed, would confer, at most, $5.44 per overtime hour.

[6] Congress struck a similar balance in 29 U. S. C. §207(f), which exempts employees whose duties "necessitate irregular hours of work," but only if they receive specified minimum rates of pay.

[7] This Court has long held that FLSA "exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those [cases] plainly and unmistakably within their terms and spirit." *Arnold* v. *Ben Kanowsky, Inc.*, 361 U. S. 388, 392 (1960). This principle is a well-grounded application of the general rule that an "exception to a general statement of policy is usually read . . . narrowly in order to preserve the primary operation of the provision." *Maracich* v. *Spears*, 570 U. S. 48, 60 (2013) (internal quotation marks omitted). In a single paragraph, the Court "reject[s]" this longstanding principle as applied to the FLSA, *ante,* at 9, without even

GINSBURG, J., dissenting

exemption of its own creation, veers away from that com-
prehension of the FLSA's mission.  I would instead resist,
as the Ninth Circuit did, diminishment of the Act's over-
time strictures.

_____

acknowledging that it unsettles more than half a century of our prece-
dent.