IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRUCE RICHARD FRIEDMAN, <br><br> Plaintiff, <br><br> vs. <br><br> NATIONAL INDEMNITY COMPANY, <br><br> Defendants. | 8:16-CV-258 <br><br> MEMORANDUM AND ORDER |

The plaintiff, Bruce Friedman, has sued his former employer, National Indemnity Company, for allegedly failing to pay him overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. This matter is before the Court on the parties' cross-motions for partial summary judgment. For the reasons discussed below, the Court will grant National Indemnity's motion for partial summary judgment and deny Friedman's motion for partial summary judgment.

BACKGROUND

The following facts are not meaningfully disputed. National Indemnity is an insurance provider located in Omaha, Nebraska. Sometime in 2014, National Indemnity made the decision to move from its midtown location to its current location at 1314 Douglas Street. Filing 62 at 4. That move required National Indemnity to build a centralized and secure location for its operations (*i.e.*, its data center). *See* filing 63-2 at 39. But in order to transition its IT network into the new data center, National Indemnity needed to hire a "network engineer" to design and implement the data center's network infrastructure—that is, the hardware, layout and pathways

connecting National Indemnity's computers and servers. *See* filing 65-4 at 30; *see also* filing 68 at 2-3. So, in May 2015, National Indemnity hired Friedman, a network engineer with experience in electronic network infrastructure. Filing 68 at 9; *see also* filing 65-4 at 23-25.

Once Friedman was hired, National Indemnity classified him as an "exempt" employee under the FLSA. Filing 68 at 14. In other words, Friedman was paid an annual salary of $95,000.00, but was not entitled to overtime pay if and when he worked more than forty hours in a given workweek. *See* filing 65 at 4; filing 68 at 9; filing 63-8 at 4. According to Friedman, however, National Indemnity improperly classified his employment status. Specifically, Friedman alleges that his primary duties at National Indemnity included physically moving equipment, laying cables, and troubleshooting National Indemnity's computer network—duties which, Friedman claims, do not constitute exempt work under the FLSA. Filing 1 at 3; *See also* filing 65 at 1, filing 65 at 5.

As such, Friedman alleges that he is entitled to damages for unpaid overtime, an equal amount of liquidated damages, and attorneys' fees for National Indemnity's misclassification. Filing 1 at 4. The parties have filed cross-motions for partial summary judgment on Friedman's claim that National Indemnity misclassified him as an exempt employee under the FLSA.

### STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes

2

demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

As briefly mentioned above, the parties have filed cross-motions for partial summary judgment on Friedman's overtime claim. That claim is premised on a provision of the FLSA requiring employers to pay overtime wages to employees who work more than forty hours during a given workweek. *See* 29 U.S.C. § 207(a)(1). But that provision is also subject to numerous exemptions—three of which, National Indemnity argues, apply to Friedman. *See* filing 62 at 24; filing 62 at 39, filing 62 at 43. Specifically,

3

National Indemnity claims that the computer employee, administrative exemption, and combination exemptions, *see* 29 U.S.C. § 213(a)(1); 29 U.S.C. § 213(a)(17); 29 C.F.R. § 541.708, exempt Friedman from overtime payments.

In determining whether a particular FLSA exemption applies, the amount of time devoted to exempt work presents factual questions. *Reich v. Avoca Motel Corp.*, 82 F.3d 238, 240 (8th Cir. 1996). But, the ultimate question of whether an employee's particular activities excluded them from the overtime benefits is a question of law. *Spinden v. GS Roofing Prods. Co.*, 94 F.3d 421, 426 (8th Cir. 1996). And as the Supreme Court has recently made clear, exemptions to the overtime requirement are to be given a "fair reading." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). That is, those exemptions are not to be construed narrowly. *Id*. With that understanding in mind, the Court will consider whether Friedman qualifies for any, or all, of the overtime exemptions claimed by National Indemnity. *See* 29 U.S.C. § 213(a)(1); 29 U.S.C. § 213(a)(17).

## I. ADMINISTRATIVE EXEMPTION

National Indemnity's first argument, that Friedman is exempt under the "administrative" exemption, is easily disposed of, so the Court will be begin there. *See* filing 62 at 40-41. The "administrative" exemption specifically exempts employees whose "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

But the Court cannot say, as a matter of law, that Friedman's primary duties included "non-manual" work related to general business operations. *See id*. After all, the parties do not dispute that a portion of Friedman's work

4

on National Indemnity's network infrastructure required him to physically move equipment and lay cables, tasks which, undisputedly, involve some manual labor. Filing 65-4 at 40-1. Accordingly, National Indemnity's partial motion for summary judgment will be denied on those grounds.

## II. COMPUTER EMPLOYEE EXEMPTION

National Indemnity's next argument, however, fares better. Specifically, National Indemnity claims that Friedman is an exempt "computer employee." Filing 62 at 24-31. The "computer employee" exemption states, in relevant part, that an employee is exempt from overtime wages if the employee is a "computer systems analyst, computer programmer, software engineer, or other similarly skilled worker" whose primary duty is:

> (A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;
>
> (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
>
> (C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or
>
> (D) a combination of duties described in subparagraphs (A), (B), and (C) the performance of which requires the same level of skills . . . .

29 U.S.C. § 213(a)(17).

National Indemnity claims that Friedman performed a combination of work generally reserved for highly skilled computer employees. *See* filing 62 at 25-28. In particular, National Indemnity alleges that Friedman had significant responsibility in the design and configuration of National Indemnity's network infrastructure, frequently met with vendors, troubleshot various connectivity issues, and made permanent recommendations about National Indemnity's technology and software usage. *See* filing 62 at 8-10. Friedman, however, argues that he primarily performed simple tasks such as "repair[ing] computer hardware and related equipment, installing, configuring, testing, and troubleshooting computer networks, hardware, and operating systems."[1] Filing 68 at 14-15. And those duties, he argues, do not require the application of highly specialized knowledge in computer systems needed to satisfy the "computer employee" exemption. Filing 65 at 16; *see also* filing 63-2 at 39.

Friedman relies on the Sixth Circuit's decision in *Martin v. Ind. Mich. Power Co.* to support why, in his view, he is not an exempt computer employee. 381 F.3d 574, 580 (6th Cir. 2004). In *Martin*, the Sixth Circuit concluded that an employee was not exempt from overtime payments when his primary duties included maintaining computer workstations, installing simple software, checking cables, and undertaking some troubleshooting from

---

[1] The Court acknowledges Friedman's contention that because his complaint was filed *pro se*, it is "not persuasive or accurate." Filing 68 at 15. But "admissions in the pleadings . . . are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended. *Missouri Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990). If Friedman's counsel had wanted to amend Friedman's *pro se* complaint after he was retained, he should have asked. *See* Fed. R. Civ. P. 15(a)(2).

the company's help desk. *Id*. at 577. Specifically, the Court found that the employee's work lacked the "theoretical and practical application of highly specialized knowledge in computer systems analysis, programing, and software engineering" needed to be exempt. *Id.* at 580.

But *Martin* is distinguishable from this case for at least two reasons. First, *Martin* was decided under the "computer professional exemption" of §213(a)(1), rather than the more recent "computer employee exemption" in § 213(a)(17). And the "computer employee" exemption broadened the previous "computer professional" in at least three ways: by (1) eliminating the requirement that the employee's work require the exercise of independent judgment; (2) eliminating any educational requirements; and (3) disposing of the requirement that the employee "have achieved a level of proficiency in the theoretical and practical application of a body of highly specialized knowledge." *Compare* 29 U.S.C. § 213(a) *with* 29 U.S.C. § 213(a)(17); *see also Ortega v. Bel Fuse, Inc.*, No. 15-21229, 2016 WL 1588393, at *10 (S.D. Fla. Apr. 20, 2016); *Bobadilla v. MDRC*, No. 03 Civ. 9217, 2005 WL 2044938, at *8 (S.D.N.Y. Aug. 24, 2005). In other words, *Martin* was decided under a much narrower statutory exemption than the one at issue here.

And second, Friedman's work at National Indemnity is distinguishable from the duties, and responsibilities, at issue in *Martin*. Indeed, the employee in *Martin* was not responsible for creating a computer system, or otherwise substantively involved in analytical decisions about how the network ought to function. *Martin*, 381 F. 3d at 577. Instead, his job duties were limited to responding to help desk tickets, troubleshooting individual computers, installing simple software, and checking cables—tasks the employee, who had no computer certifications or advanced training, could easily manage. *Id.*

7

But that is not the case here. Rather, the record demonstrates that Friedman *did* offer various opinions as to how National Indemnity's network ought to function, and *was* primarily responsible for designing National Indemnity's infrastructure. *See* Filing 68 at 35; *see also* filing 63-3 at 10, filing 63-2 at 40. And that is true even assuming that Friedman spent a significant amount of time moving equipment and laying cables, as he contends. After all, Friedman admits that designing National Indemnity's "core network" necessarily required the construction of physical network connections (*i.e.,* layer one connections). Filing 65-4 at 48. And layer one connections, in essence, required the systems engineers to physically move servers and lay cables—work not "just anybody" could do. Filing 65-4 at 48.

> Q. No, you say, "technically qualified and trained personnel".
>
> A. Yeah, you can't -- can you build a Cat6 cable? Can you terminate fiberoptic connectivity?
>
> Q. Well, I get to ask the questions.
>
> A. But that's my point is, at the end of the day, regardless of the adherence to a job description, or the meaning of an engineer, to say that when I'm running cable or moving servers or doing those things is work that you could go hire manpower people to come in and do, that's not true. You can't just augment staff, even at this level, with just anybody. They have to know how to do it.

Filing 65-4 at 48.

And Friedman's integral role in the design of National Indemnity's network infrastructure is also demonstrated by Friedman's own testimony that he delivered "facts and choices" about the "core network." Filing 63-2 at 40. In particular, he made recommendations concerning "components, about pricing, about the [value-added reseller] that was going to service or sell the product, about warranty, about service, about the technology that was being used, [and] about a plethora of things." Filing 65-4 at 29. He also engineered the interplay between access devices, aggregation devices, and the network core. Filing 63-8 at 5. And he planned, implemented, and maintained network backup and recovery mechanisms for the data center. *See* filing 63-6 at 4. Friedman also provided "high level technical support on software and server issues," filing 63-6 at 4, identified "super complex" server problems, filing 65-4 at 51, and worked to solve National Indemnity's "significant [and] persistent" network issues, filing 65-4 at 28.

In other words, Friedman—who was National Indemnity's "most knowledgeable" storage engineer—was a large, if not primary, part of the design and configuration of National Indemnity's network infrastructure. Filing 68 at 35; *see also* filing 63-3 at 10. And that work necessarily involved the practical application of knowledge and training unique to highly skilled computer professionals. After all, courts have routinely found that analyzing computer systems, troubleshooting complex server issues, and configuring computer networks satisfies the "computer employee" exemption. *See Grills v. Hewlett-Packard Company*, 88 F. Supp. 3d 822, 826-27 (N.D. Ohio 2015); *Campbell v. Kannapolis City Sch. Bd. of Educ.*, 55 F. Supp. 3d 821, 825 (M.D.N.C. 2014); *Olorode v. Streamingedge, Inc.*, No. 11 Civ. 6934, 2014 WL 1689039, at \*22 (S.D.N.Y. Apr. 29, 2014), *report and recommendation adopted*, 2014 WL 3974581 (S.D.N.Y. Aug. 13, 2014); *Clarke v. JPMorgan*

9

*Chase Bank*, N.A.,, No. 08 Civ. 2400, 2010 WL 1379778, at *17 (S.D.N.Y. Mar. 26, 2010) ; *Young v. Cerner Corp.*, No. 06-0321-CV, 2007 WL 2463205, at *5 (W.D. Mo. Aug. 28, 2007); *Bobadilla,* WL 2044938 at *6-9.

Accordingly, the Court finds that Friedman's primary duties constitute exempt work under the "computer employee" exemption. As such, the Court will deny Friedman's motion for partial summary judgment on these grounds, and grant National Indemnity' motion for partial summary judgment.

### III. COMBINATION EXEMPTION

As a final matter, National Indemnity also claims that Friedman is exempt under the FLSA "combination" exemption. The "combination" exemption allows combining the exempt work from one section to the exempt work of another section. 29 C.F.R. § 541.708. This exemption is intended to address "the situation that exists when an employee does not meet the primary-duty requirement of any individual exemption." *IntraComm, Inc. v. Bajaj,* 492 F.3d 285, 294 (4th Cir. 2007). But where, as here, the employee does meet the primary duty requirement of an individual exemption (*i.e.*, the computer employee exemption) the combination exemption does not apply. *See id.* So, National Indemnity's motion for partial summary judgment will be denied on those grounds.

### CONCLUSION

In sum, the Court concludes that National Indemnity has demonstrated that Friedman was exempt from the overtime provision of the FLSA as a matter of law pursuant to the "computer employee" exemption. Thus, Friedman's motion for partial summary judgment on his overtime claim will be denied, and National Indemnity's motion for partial summary judgment on Friedman's overtime claim will be granted.

IT IS ORDERED:

1.  Friedman's motion for partial summary judgment ([filing 64](filing 64)) is denied.

2.  National Indemnity's motion for partial summary judgment ([filing 61](filing 61)) is granted.

3.  This case is referred to the Magistrate Judge for case progression.

Dated this 13th day of April, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge